UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ALAN CALLOWAY,

          Plaintiff,

-vs-                                   Case No. 5:04-cv-104-Oc-10GRJ

SAFECO INSURANCE COMPANY OF
AMERICA,

          Defendant.
_____

## **O R D E R**

This is an action for breach of an insurance contract. Defendant Safeco Insurance Company of America ("Safeco") has moved for summary judgment (Doc. 19). Plaintiff Alan Calloway has filed a response in opposition (Doc. 23). The Court has reviewed the motion papers, Safeco's reply brief (Doc. 27), and the entire case file, and concludes that the motion is due to be denied.

## **Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." Samples on Behalf of

Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. Celetex, 477 U.S. at 324. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

## Discussion

I.  Undisputed Facts

The case involves a homeowners insurance policy Safeco provided to Calloway for coverage on Calloway's home in Salt Springs, Florida (the "Safeco Policy"). Neither side has provided a copy of the insurance policy, and with one exception, neither side has provided any information concerning the terms of the policy. However, it appears that the Parties are in agreement that the policy provided coverage for water damage to the home.

In either March or April of 2002, a water heater pipe broke in Calloway's home, resulting in a water leak and damage to the property.[1] The Parties agree that the Safeco Policy was in effect at the time of the water damage. At some point in time, Calloway filed a claim with Safeco under the policy. Home Again Restorations d/b/a Paul Davis Restoration of Marion, Lake & Sumter Counties ("Paul Davis Restoration") made all of the repairs to Calloway's home. Safeco paid Paul Davis Restoration for the repairs, although it is not clear whether Safeco paid Paul Davis Restoration directly, or sent checks made payable to both Calloway and Paul Davis Restoration, jointly. It is also not clear who first contacted Paul Davis Restoration, or engaged the company to perform the repairs.

On March 13, 2002, Calloway and Paul Davis Restoration executed a Work Authorization form which provides, in relevant part:

> We authorize Paul Davis Restoration of Marion, Lake, & Sumter, herein-after referred to as Contractor, to make repairs to our property at the address below, damaged by water on or about 3/10/02. . . .
>
> We agree that the total cost of the work will be in accordance with the original estimate and any supplemental estimates prepared by Contractor and approved by the adjuster for our insurance company, plus any change orders approved by Owners and Contractor.
>
> This work authorization, along with all approved estimates, supplemental estimates and change orders shall constitute the contractual obligations of the Owners and Contractor.

---

[1]Although Calloway alleged in his Complaint (Doc. 2) and Affidavit (Doc. 29) that the leak occurred in April of 2002, the Work Authorization Form signed by Calloway states that the water damage occurred on or about March 10, 2002 (Doc. 19-3).

3

> We understand that Contractor has no connection with our insurance company or its adjuster and that we alone have the authority to authorize Contractor to make said repairs.
>
> . . . .
>
> Our insurance company is Safeco and we authorize them to pay all proceeds due Contractor payable under our policy directly to Contractor and any mortgage company named. . . .

Doc. 19-3.

Calloway alleges that Paul Davis Restoration did not complete the repairs properly, and in particular, failed to place a vapor barrier between the ground and the joist underlying walls and floor. Calloway contends that Paul Davis Restoration's shoddy work resulted in a mold infestation throughout the home and further substantial property damage.

Calloway made a claim to Safeco for this additional damage. Safeco ultimately refused to cover the claim both because it had not renewed Calloway's policy, and because Safeco took the position that the damage was the result of a new loss not covered by the old policy. Calloway ultimately performed substantial repairs to the home at his own expense, and for which he now seeks compensation from Safeco in this Court.

## II. Procedural History

After Safeco refused to pay Calloway's claim for the additional damage, Calloway filed a single claim for breach of contract against Safeco in the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida on February 13, 2004 (Doc. 2). On March 22, 2004, Safeco removed the case to this Court on the basis of diversity jurisdiction under

28 U.S.C. § 1332 (Doc. 1). On June 25, 2004, the Court administratively closed the case to allow the Parties to engage in an appraisal process (Doc. 7).

The case remained closed until March 28, 2007, when Calloway moved to reopen the action (Doc. 8), which the Court granted on April 27, 2007 (Doc. 10). No further action was taken by either Party until July 29, 2008, when Safeco moved to dismiss for lack of prosecution (Doc. 11). In response to the Court's Order to Show Cause (Doc. 12), Calloway stated that he had been focused on his related state court action against Paul Davis Restoration, and that the Parties were now prepared to go forward in this Court. Accordingly, the Court denied Safeco's motion to dismiss, directed Safeco to file an answer, and ordered the Parties to file a new case management report (Doc. 14).

The Parties filed their case management report on November 18, 2008 (Doc. 16), and on December 8, 2008, the Court established a Case Management and Scheduling Order (Doc. 17), establishing a discovery cut off date of September 18, 2009, and a dispositive motion deadline of November 3, 2009.

### III. Safeco's Motion for Summary Judgment

Under a traditional breach of insurance contract claim, to recover for the additional damage caused by the mold infestation, Calloway would have to show: (1) that mold was an insured risk under the terms of the Safeco policy; and (2) that the mold developed during the term of the existing policy. However, it is clear that Calloway is not pursuing this theory and has not attempted to prove either point. Rather, his claim is that the mold was caused by Paul Davis Restoration's shoddy workmanship, that Safeco engaged Paul Davis

5

Restoration to perform the repairs at Calloway's home, and that Safeco thus became responsible for the damages resulting from Paul Davis Restoration's poor workmanship.

Safeco's primary argument in support of summary judgment is that it did not elect to repair the water damage to Calloway's home in 2002 itself, and therefore cannot be held liable for any subsequent damage caused by Paul Davis Restoration's allegedly substandard repairs. Pursuant to Florida law,[2] if Safeco had exercised an option to repair Calloway's home itself, Safeco would have created a new contract. This new contract would necessarily require Safeco to restore the house to substantially the condition existing before the damage occurred, and Safeco would be liable for any damages flowing from a breach of such a contract to repair, even though the damage occurred after the lapse of the original insurance policy. See Travelers Indemnity Company v. Parkman, 300 So. 2d 284, 285 (Fla. 4th DCA 1974); Maryland Casualty Co. v. Florida Produce Distributors, Inc., 498 So. 2d 1383, 1384-85 (Fla. 5th DCA 1986); Drew v. Mobile USA Ins. Co., 920 So. 2d 832, 835-836 (Fla. 4th DCA 2006). But since Safeco allegedly did not exercise such an option, it bears no additional liability.

In support of this argument, Safeco points to Calloway's interrogatory responses, and his complaint and affidavit filed in the state court action against Paul Davis Restoration, all of which specify that the damages Calloway is seeking compensation for relate entirely to the repairs by Paul Davis Restoration. Safeco also relies heavily on the Work

---

[2]The Parties agree that Florida law applies to the insurance contract.

Authorization form signed by Calloway and Paul Davis Restoration. Safeco contends that this form conclusively demonstrates that it did not elect to repair the home, but instead gave Calloway the discretion to select a repair company of its choosing, and that Calloway had the sole authority to authorize any and all repairs by Paul Davis Restoration.

In response, Calloway has submitted his Affidavit (Doc. 29), as well as his interrogatory responses from his state court action against Paul Davis Restoration (Doc. 23-2).[3] Both documents state that Safeco retained Paul Davis Restoration to write an estimate and to perform the repair work to Calloway's home, and that Safeco authorized all work performed by Paul Davis Restoration pursuant to Safeco's estimate. See Doc. 29, ¶ D. Calloway further stated that "[a]s far as I know, Safeco exercised its right to repair under the policy bringing in a contractor and dealing with that contractor directly which would make the insurer liable for any costs and any consequential damage resulting from their contractor's negligence and/or poor workmanship." Id., ¶ H.

Based on this conflicting evidence, the Court finds that material issues of fact exist such that summary judgment is not warranted. On the one hand, Safeco has submitted an affidavit from its litigation adjustor, Sally Carmody, to support its contention that it did not elect to repair Calloway's home (Doc. 27-2). On the other hand, Calloway has testified that Safeco selected Paul Davis Restoration and that Safeco had full control and authority

---

[3]Safeco argues in its reply brief that Calloway's interrogatory responses are inadmissible pursuant to Fed. R. Civ. P. 33(c) and Fed. R. Evid. 613(b) and 804(b) . Because the responses are in large part identical to the averments in Calloways' affidavit, the Court finds that Safeco's argument is now moot.

over the repairs.[4] And contrary to Safeco's position, the Work Authorization form does not clarify the issue. That form only states that Calloway authorized Paul Davis Restoration to commence repairs - it does not speak to who actually selected the repair company. The form also mentions Safeco's estimate and specifies that Safeco has to approve any supplemental estimates, which could imply that Safeco was involved in and had authority over Paul Davis Restoration's work. Because the facts in this case are in conflict as to who selected the repair company, summary judgment must be denied. See Drew v. Mobile USA Ins. Co., 920 So. 2d 832, 833-836 (Fla. 4th DCA 2006) (denying summary judgment in breach of insurance contract action involving election to repair provision where parties submitted conflicting affidavits as to who selected the repair company).

Safeco also argues that it is entitled to summary judgment because the homeowners insurance policy excluded coverage for any damages caused by planning, construction, maintenance, or repair work done at the property and therefore does not cover any damages caused by Paul Davis Restoration. In other words, Safeco is challenging whether the mold infestation was an insured risk under the terms of the policy. This argument is not applicable because Calloway is not claiming that the mold infestation itself is covered by

---

[4]Safeco argues that Calloway's testimony on this point directly contradicts the written Work Authorization form, and therefore is inadmissible parol evidence. However, only parties to a contract, or their privies, can assert the parol evidence rule in Florida. See The Florida Bar v. Frederick, 756 So. 2d 79, 84-85 (Fla. 2000); O.L. Palmer v. R.S. Evans, Jacksonville, Inc., 81 So. 2d 635, 637 (Fla. 1955); Pittman v. Providence Washington Ins., 394 So. 2d 223, 224 (Fla. 5th DCA 1981). Safeco has taken the position that it was not a party to the Work Authorization form, and had no contractual relationship with Paul Davis Restoration. Thus, it would appear under Safeco's theory that it is, at best, a third party to the Work Authorization form, and therefore cannot assert the parol evidence rule.

the policy. Rather, Calloway's argument is premised on whether Safeco elected to repair his property through Paul Davis Restoration and, in turn, became liable for any damages flowing from Paul Davis Restoration's repair work. Therefore, summary judgment on this point shall be denied.[5]

## **Conclusion**

Accordingly, upon due consideration, Defendant Safeco Insurance Company of America's Motion for Summary Judgment (Doc. 19) is DENIED. Safeco's Motion to Strike Affidavit of Alan Calloway (Doc. 30) is DENIED AS MOOT.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 5th day of January, 2010.

UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record

---

[5]The Court notes that Safeco previously moved for an extension of the discovery deadline, which the Court granted until December 19, 2009 (Docs. 35, 37), and that Safeco stated in its motion that it would require yet more time for discovery in the event its motion for summary judgment was denied. The Court has already provided the Parties over a year for discovery and the Court is disinclined to grant any further continuances, particularly in light of the length of time this case has been pending.